AO93 Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Arizona

| | |
|---|---|
| In the Matter of the Search of<br>2902 West Corrine Drive, Phoenix, Arizona 85029 | Case No. 22-130MB |

## SEARCH AND SEIZURE WARRANT

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the District of Arizona:

**As further described in Attachment A-1.**

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal:

**As set forth in Attachment B.**

**YOU ARE COMMANDED** to execute this warrant on or before May 31, 2022 *(not to exceed 14 days)*
☒ in the daytime 6:00 a.m. to 10:00 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to any United States Magistrate Judge on criminal duty in the District of Arizona.

N|A      ☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized ☐ for  30  days *(not to exceed 30)* ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: May 17, 2022 @ 120 pm      _____
                                                                    *Judge's signature*

City and state: Phoenix, Arizona                 Honorable Michelle H. Burns, U.S. Magistrate Judge
                                                                    *Printed name and title*

## ATTACHMENT A-1

*Property to be searched*

The property to be searched is 2902 West Corrine Drive, Phoenix Arizona 85029 (the **"PREMISES"**), further described as a single-family home located on the North West corner at the intersection of Corrine Drive and 29th Avenue in Phoenix, Arizona.   The PREMISES is two toned with a tan in color upper portion, over red brick.  It has two cream colored awnings situated over front facing windows, all of which have shutters over the windows.  The PREMISES also has one carport and a yellow fire hydrant in the front yard. The property to be searched also includes any vehicles located on the curtilage of the PREMISES, including those parked in the driveway or carport.  As seen in the image below, Vehicle #1 and Vehicle #4 are clearly visible parked at the PREMISES.





## ATTACHMENT B

*Items to be Seized and Searched*

## I.   ITEMS TO BE SEIZED AND SEARCHED

1.    The items to be seized are evidence, contraband, fruits, or instrumentalities of violations of Title 18 U.S.C. §§ 1341, 1343, 371, and 912, (the "Target Statutes"), as described in Attachments A-1, A-2, A-3, A-4 and A-5, including:

   **a.** All documents, notebooks, photographs, records, emails, ledgers, checkbooks, and invoices, stored electronically or otherwise, which reflect financial transactions associated with identity theft, trafficking in stolen identities, and fraud involving the unauthorized use of personally identifiable information (PII).

   b. All documents, notebooks, photographs, records, emails, ledgers, checkbooks, and invoices, stored electronically or otherwise, relating to a conspiracy to defraud F.W., B.C., M.D., and Y.C.L., and other known and unknown victims;

   c. All documents, notebooks, photographs, records, emails, ledgers, checkbooks, and invoices which reflect income sources of KNUTSON and EILEEN KNUTSON, and other unknown co-conspirators, including copies of tax returns and bank statements, brokerage statements, and/or statement of financial institutions;

   d. Records and information relating to the identity, state of mind, or location of the suspects or co-conspirators;

   e. Telephone and address books or papers which reflect names, addresses, telephone numbers, or notations for persons or entities in relation to any financial or banking matter, business matter, or from whom enumeration of any kind has been provided in connection with contact with individuals associated with KNUTSON and EILEEN KNUTSON, and other unknown co-conspirators.

6

f.  Any digital evidence used to facilitate the above listed violations, including cellular phones or computers;

g.  Safes, lock boxes, currency, bulk cash, monetary instruments and/or documents indicating proceeds of illegal activity;

h.  Records and information relating to the e-mail account Gregsmaintance@gmail.com or thehansrvices@yahoo.com;

i.  Records and information relating to communications with Internet Protocol addresses 68.106.251.187;

j.  Records and information relating to malicious software;

    a.  With respect to any digital device, computers, cellular phones, containing evidence falling within the scope of the foregoing categories of items to be seized;

(hereinafter, "COMPUTER"):

k.  evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

l.  Electronic devise such as cellular telephones and related devices to include digital assistants or electronic organizers.

m.  evidence of software that would allow others to control the COMPUTER, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

n.  evidence of the lack of such malicious software;

o.  evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

p.  evidence indicating the computer user's state of mind as it relates to the crime under investigation;

7

q. evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

r. evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the COMPUTER;

s. evidence of the times the COMPUTER was used;

t. passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

u. documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

v. records of or information about Internet Protocol addresses used by the COMPUTER;

w. records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

x. contextual information necessary to understand the evidence described in this attachment.

2.      Routers, modems, and network equipment used to connect computers to the Internet.

As used above, the terms "records" and "information" includes all forms of creation or storage, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

The term "computer" includes all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices performing logical, arithmetic, or storage functions, including desktop computers, notebook computers, mobile phones, tablets, server computers, and network hardware.

8

The term "storage medium" includes any physical object upon which computer data can be recorded. Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs, and other magnetic or optical media.

## II.   SEARCH PROCEDURE FOR DIGITAL DEVICES

1. In searching digital devices or forensic copies thereof, law enforcement personnel executing this search warrant will employ the following procedure:

   a) Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) to an appropriate law enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable.

   b) The search team will conduct the search only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

2. The search team may subject all of the data contained in each digital device capable of containing any of the items to be seized to the search protocols to determine whether the device and any data thereon falls within the list of items to be seized. The search team may also search for and attempt to recover deleted, "hidden," or encrypted data to determine, pursuant to the search protocols, whether the data falls within the list of items to be seized.

   a) The search team may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

   b) When searching a digital device pursuant to the specific search protocols selected, the search team shall make and retain notes regarding how the search was conducted pursuant to the selected protocols.

   c) If the search team, while searching a digital device, encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that device pending further order of the Court and shall make and retain notes detailing how the

9

contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

d) If the search determines that a digital device does not contain any data falling within the list of items to be seized, the government will, as soon as is practicable, return the device and delete or destroy all forensic copies thereof.

e) If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

f) If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of items to be seized, the government may retain forensic copies of the digital device but may not access them (after the time for searching the device has expired) absent further court order.

g) Notwithstanding the above, after the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

3. In order to search for data capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items:

a) Any digital device capable of being used to commit, further or store evidence of the offense(s) listed above;

b) Any equipment used to facilitate the transmission, creation, display, encoding, or storage of digital data;

c) Any magnetic, electronic, or optical storage device capable of storing digital data;

d) Any documentation, operating logs, or reference manuals regarding the operation of the digital device or software used in the digital device;

e) Any applications, utility programs, compilers, interpreters, or other software used to facilitate direct or indirect communication with the digital device;

f) Any physical keys, encryption devices, dongles, or similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g) Any passwords, password files, test keys, encryption codes, or other information necessary to access the digital device or data stored on the digital device.

4. The special procedures relating to digital devices found in this warrant govern only the search of digital devices pursuant to the authority conferred by this warrant and do not apply to any search of digital devices pursuant to any other court order.